363 Mich. 612 (1961)
110 N.W.2d 579
In re KENNISON SALES & ENGINEERING COMPANY, INCORPORATED.
BROWNING
v.
NATIONAL BANK OF DETROIT.
Docket No. 37, Calendar No. 48,792.
Supreme Court of Michigan.
Decided September 21, 1961.
*614 A. Albert Sugar, for plaintiff receiver.
Ernest C. Wunsch and Robert B. Aikens, for defendant bank.
KAVANAGH, J.
In March, 1956, Everett B. Kennison and his wife Pauline were murdered while on a vacation trip in Mexico. Mr. Kennison, at the time of his death, was president of the Kennison Sales & Engineering Company, Incorporated. He owned 1% of the stock of the corporation and his wife Pauline owned 98%, the remaining 1% being owned by Dennis H. Robinson, a neighbor of the Kennisons. The firm was incorporated on October 4, 1954, and had been previously operated as a sole proprietorship by Mr. Kennison. The firm's original registered office was on Cass avenue in Detroit, while part of the corporate files and other books and records were maintained at the Kennison home on Evergreen avenue in Detroit. Some of the business was also done at that location.
Shortly after the Kennisons' burial, Mr. Dennis H. Robinson, a director of the corporation, Mr. Tilden Gallagher, attorney for the corporation, Mr. Charles J. Dormal, brother-in-law of Mrs. Kennison, and Adrian Kennison, brother of Mr. Kennison, went to the home on Evergreen avenue to examine the effects of Mr. and Mrs. Kennison. They found personal records of the Kennisons and records and files relating to the Kennison Sales & Engineering Company, Incorporated. In addition they found 4 sealed, white, unmarked envelopes. The first envelope contained $10,000 in cash; the second envelope $8,200 in cash; the third envelope $195 in Canadian funds; and the fourth envelope $8,000 in cash. This cash, except the Canadian funds, amounting to $26,200, is the subject matter of this suit. In addition there were found cashier's checks amounting *615 to $20,554.88 payable to Kennison Sales & Engineering Company, Incorporated; a lady's purse containing cash in the amount of $1,449.65; and a cashier's check for $780 payable to Pauline Kennison.
An inventory was made by the parties followed by a discussion of what to do with the funds. They decided to turn them over to Brinks for safekeeping. The parties later turned the $26,200 over to the National Bank of Detroit.
On May 28, 1956, the Wayne county probate court appointed the National Bank of Detroit administrator with will annexed of the estate of Everett B. Kennison. On March 29, 1956, Charles J. Dormal was appointed administrator of the estate of Pauline Kennison.
Mr. George E. Bowles was appointed attorney for the estate of Everett B. Kennison. Mr. Tilden Gallagher was retained as attorney for the administrator of the estate of Pauline Kennison.
Mr. Dormal, Mr. Bowles, and a Mr. Arthur A. Ude were elected directors of the Kennison Sales & Engineering Company, Incorporated. These directors appointed the National Bank of Detroit as agent for the corporation and turned over all the corporate books and records to it. From 1956 up to February 16, 1959, meetings of the board of directors of the corporation were held frequently at the National Bank of Detroit.
At the direction of 1 of the directors, the National Bank of Detroit paid claims against the estate of Everett B. Kennison totaling $2,932.95. These payments were made with the knowledge and consent of the directors of the corporation.
The funds in question were not included in the inventory of the estate of Everett B. Kennison filed with the probate court. The only explanation given for this in the record is that the estate of Pauline *616 Kennison, through its attorney, had indicated it intended to file a claim to part of this fund and the bank did not want it included in the inventory until the claim was resolved.
On February 20, 1959, a petition for the dissolution of Kennison Sales & Engineering Company, Incorporated, was filed. William B. Browning was appointed receiver.
On March 14, 1960, the receiver filed his petition for an order to show cause why the National Bank of Detroit should not be ordered to turn over the funds in question to him. Hearings were had and the trial judge concluded from lengthy testimony that "the bank's position has been one of at best, a dual capacity  administrator for the estate of Everett Kennison, and the agent for the corporation." The court made clear he was not determining title to the cash, but only the right to possession. He directed that the cash be turned over to the re-receiver forthwith and that the receiver hold the sums intact. He provided for the increase of the receiver's bond commensurate with the amount of money in his hands.
The National Bank of Detroit, through its attorney, offered a proposed order which directed that the National Bank of Detroit, as fiduciary of the estate of Everett B. Kennison, should forthwith deliver and pay over to the National Bank of Detroit the $26,200 plus any and all income earned therefrom during the period which the bank was in possession of such sum as fiduciary of the estate of Everett B. Kennison, setting up certain terms upon which the bank was to hold the funds.
The circuit judge refused to sign such an order and entered one directing the National Bank of Detroit as stakeholder and agent to turn over the sum of $26,200 to the receiver forthwith.
*617 The bank, as administrator with will annexed of the estate of Everett B. Kennison, has appealed, claiming the circuit court was in error in entering an order in a summary proceeding transferring possession of the cash fund held under a claim of title by the administrator to the receiver; that the order appealed from was unconstitutional; and that the administrator would be irreparably injured by the order transferring the fund to the receiver.
Appellant's argument is based on the well-established rule that a receiver may not invoke the aid of a court in a summary proceeding to take possession of property held by a stranger to the proceeding. With this general rule appellee does not disagree. Appellee contends, and we think correctly so, that the general rule that a person claiming adversely cannot be ordered to surrender possession of property to a receiver in a summary proceeding does not apply where such adverse claimant is a party to the receivership proceeding or is an agent of or in privity with such party.
The trial court found the National Bank of Detroit was at best acting in a dual capacity  that of administrator of the estate of Everett B. Kennison and agent for the corporation.
This Court in the case of Stowe v. Wolverine Metal Specialties Co., 242 Mich 624, speaking through Justice FELLOWS, recognized the general rule but said (pp 628-630):
"But corporations may only act through their officers and agents, and while the rule above referred to has generally been recognized, it has likewise been generally recognized that it is not applicable to the officers and agents of corporations. In High on Receivers (4th ed), § 312a, it is said:
"`When a receiver is appointed over a corporation, with the usual powers of receivers, and specially empowered by the order of the court to receive all *618 the effects and choses in action of the corporation, such order involves a correlative duty upon the part of the corporate officers to deliver the assets to the receiver, even though such delivery is not specifically directed by the court. A failure, therefore, by the officers of the corporation to deliver its assets to the receiver, and their sale by such officers, constitute a contempt of court and will be punished as such.'
"And in section 144 of the same work it is said:
"`The receiver, being the officer or agent of the court, is entitled to its assistance in obtaining possession of property which is the subject-matter of his receivership, and may have an order of court to procure possession of such property, not only against defendant in the action, but in a proper case against his agents and employees, although not parties to the record, requiring them to deliver up the specific property.'
"In 1 Tardy's Smith on Receivers (2d ed), p 872, § 345, it is said:
"`A failure of the officers of a corporation over which a receiver has been appointed to deliver its assets to such receiver, even though the delivery is not specifically ordered by the court, constitutes a contempt of court.'
"In Tolleson v. People's Savings Bank, 85 Ga 171, 178 (11 SE 599), it was said:
"`When a court acquires jurisdiction over a corporation as a party, it obtains jurisdiction over the official conduct of the corporate officers so far as that conduct may be involved in the remedy against the corporation which the court is called upon to enforce.'
"And the commitment of the officer for contempt was affirmed. In the case of In re Cohen, 5 Cal 494, 496, where this question was before the court, it was said:
"`Courts of equity unquestionably have the power to appoint receivers and to order them to take possession of the property in controversy, whether in *619 the immediate possession of defendant or his agent, and in proper cases, they can also order the defendant's agents or employees, although not parties to the record, to deliver the specific property to the receiver.'
"See, also, Brandt v. Allen, 76 Iowa 50 (40 NW 82, 1 LRA 653); State, ex rel. Cameron, v. District Court, 48 Nev 198 (228 P 617); Blaise v. Security Brewing Co., 124 La 979 (50 So 816); Thornton v. Washington Savings Bank, 76 Va 432; Young v. Rollins, 90 NC 125; Wheeler v. Mathews, 70 Fla 317 (70 So 416); Edrington v. Pridham, 65 Tex 612. And this Court has recognized the rule in Baldwin v. Wayne Circuit Judge, 101 Mich 119 (25 LRA 739), although in that case the officers had been garnisheed and it was held that under such circumstances the trial judge properly refused to commit them for contempt."
The sole question to be determined in the instant case, then, is one of fact as to whether or not the National Bank of Detroit held these moneys as an agent and stakeholder for the corporation or whether it held them as administrator of the estate of Everett B. Kennison.
In analyzing the testimony with respect to this point the trial court had before it the inventory in the estate of Everett B. Kennison, which did not list these funds as an asset of the estate. An experienced trust officer of a large bank certainly would have listed all the assets in the inventory and made reference to the alleged claim of the estate of Pauline Kennison. Following is some of the testimony of Malcolm McMillan, assistant trust officer of the National Bank of Detroit:
"A. We were agent for the directors and they were having periodic meetings in which all these things were discussed verbally and there was no formal minutes at those meetings taken and they were cognizant of everything that went on.
*620 "The Court: Because you were agent for the directors?
"A. Yes, your Honor.
"The Court: And, your agency came about by reason of what, may I ask?
"A. Well, an agency agreement.
"The Court: Is there such an agreement in existence?
"A. There is some sort of an agreement. I don't remember whether it was a letter or a formal document, but there was a writing of some type.
"The Court: And when did your agency commence? What is your best recollection?
"A. Well, shortly after he died.
"The Court: Did your agency include the right to or the duty to gather up any assets of the corporation and the estate?
"A. Yes, I would say so, yes.
"The Court: Would you have any objection in the interest of assisting me in making a determination to letting us see the correspondence and that agreement and what the dealings were in relation to this money?
"A. I have no objection, your Honor, seeing the agreement by which we were made, no, sir.
"The Court: Or whatever correspondence you have relative to these funds.
"A. No, I wouldn't have any objection to that either, although I don't think that there is a lot of correspondence because as I say we had almost weekly meetings at the start.
"The Court: At those weekly meetings, were the board of directors there?
"A. That's right, your Honor, they were.
"The Court: And, yourself as fiduciary for the estate.
"A. Yes.
"The Court: You were also agents for the directors?
"A. Yes.
*621 "The Court: Now, at those meetings, did you ever discuss these funds  the money that was found in the house and the checks and so on.
"A. We discussed everything concerning both the estate and the corporation."
Mr. Tilden Gallagher, who had testified with respect to the acts of the bank, participated in a colloquy between court and counsel as follows:
"Mr. Gallagher: Oh, yes, the bank acted in accordance with an authorization in writing of the board of directors. The bank acted as an agent for them  for the Kennison Sales & Engineering Company.
"The Court: After he died?
"Mr. Gallagher: Surely.
"The Court: And, this is their accounting, is it?
"Mr. Gallagher: Let me say this, your Honor, this statement of the National Bank of Detroit is for the Kennison Sales & Engineering Company for the period referred to by Mr. Sugar from March 28 to May 14, 1959. I haven't seen this before so that if it is going to be in evidence, I think it should be.
"Mr. Sugar (attorney for the receiver): Your Honor, may I suggest this, Mr. King, do you have any objection if I introduce this in evidence?
"Mr. King (attorney for the bank): I haven't seen it.
"Mr. Sugar: You haven't seen it? It was made available by your client.
"Mr. Gallagher: Let me say something else in connection with this exhibit, in fairness to the witness, let's find out if he has even seen it. He is being cross-examined on it.
"Mr. Sugar: My cross-examination, your Honor, related itself to only 1 aspect of it. I think that Mr. Dormal has already testified to that portion which I am satisfied with. I have no objection to the introduction of the exhibit into evidence. It was made available by the National Bank of Detroit to *622 us and I am proffering it to their counsel. They are the ones that prepared it.
"The Court: Now, the state of this record is such that from this situation I learn that the bank as an agent of the board of directors of the corporation holds money found in the corporate office.
"Mr. Sugar: And which Mr. McMillan stated was not for safekeeping, but that he now claims it is a representative of the fiduciary or the National Bank of Detroit in the estate of Everett Kennison.
"The Court: I want to see that exhibit when you are through with it.
"Mr. King: Your Honor, the file in the receivership shows that the National Bank of Detroit acted as agent for the corporation. I don't think there is any secret about that.
"The Court: The fact is that I want this record to emphasize, if this case should go to the Supreme Court, that here was clear adverse relationship that were never disclosed to this court."
Mr. King, in a statement to the court, said:
"There is the petition for dissolution. There is an item in the record which indicates in paragraph 4, that an inventory of all the assets of the estate, both real and personal, in law and equity that this corporation has access to or any part hereof and all books, vouchers and so on, of the corporation are in the hands of the National Bank of Detroit, which has been acting as agent for said corporation under an agreement with the said members of the board of directors of said corporation."
An examination of the petition discloses this statement to be true.
Receiver's exhibits 5, 6, 7, and 8 were admitted without objection from Mr. King, attorney for the bank, or from Mr. Gallagher, attorney for the estate of Mrs. Kennison. Exhibit 5 purports to be an inventory of assets as of March 28, 1956, made by the National Bank of Detroit of the Kennison Sales & *623 Engineering Company, Incorporated. Exhibit 6 is a statement of receipts and disbursements by the bank in behalf of the corporation from March 28, 1956, to May 14, 1959, and an inventory of the assets as of May 14, 1959. Exhibit 7 appears to be an accounting of receipts and disbursements by the bank for the corporation from May 14, 1959, to August 11, 1959. Exhibit 8 is an inventory of the assets as of August 11, 1959, made by the bank for William B. Browning, receiver.
Clearly, the National Bank of Detroit, as indicated by these exhibits, was acting as agent for Kennison Sales & Engineering Company, Incorporated, from March 28, 1956, through August of 1959 after the receiver was appointed. As such agent it was a party to the proceedings and subject to the control of the chancellor in the receivership. There was evidence from which the court could, and did, find that the funds came into its possession and were retained by the National Bank of Detroit as stakeholder and agent for the corporation and not as an asset of the estate of Everett B. Kennison.
The rule permitting the receiver to obtain possession of the property held by a party's agents and privies in a summary proceeding is a logical application of the agency rule based on the view that the agent's possession is the possession of his principal. Upon his appointment, the receiver succeeds to the principal's right of possession against the agent. The property is within the constructive possession of the receiver and is thus brought within the jurisdiction of the court.
We conclude that the court was correct both as to his findings of fact as to the agency of the National Bank of Detroit and his right to order the funds turned over to the receiver forthwith.
*624 The order of the trial court is affirmed. The receiver shall have costs.
DETHMERS, C.J., and CARR, KELLY, SMITH, EDWARDS, and SOURIS, JJ., concurred.
BLACK, J., did not sit.